IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JUAN MANUEL CANO CANO,<br><br>Plaintiff,<br><br>v.<br><br>2. COURTHOUSE CONCEPTS, INC.,<br><br>Defendant. | Case No.: 25-cv-00568-SH<br><br>**COMPLAINT AND JURY TRIAL DEMANDED** |

Juan Manuel Cano Cano ("Plaintiff" or "Mr. Cano") by and through his counsel brings the following Complaint against CourtHouse Concepts, Inc. ("Defendant" or "CourtHouse") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's employer, which included criminal records that did not belong to Plaintiff.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions

1

regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's employer that Plaintiff has five criminal records. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff has never been charged with a crime in his life.

5. Plaintiff's employer sent him home and informed him of the termination of his employment after receiving an employment background check report from Defendant, which included the inaccurate criminal records, which do not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from Kern County, California regarding the criminal records prior to publishing Plaintiff's report to his employer.

7. Had Defendant performed even a cursory review of the public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their name and resides in a different part of the country from Plaintiff.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff his job.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Juan Manuel Cano Cano ("Plaintiff" or "Mr. Cano") is a natural person residing in Owasso, Oklahoma, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant CourtHouse Concepts, Inc. ("Defendant" or "CourtHouse") is a Arizona corporation doing business throughout the United States, including the State of Oklahoma and in this District, and has a principal place of business located at 4250 N Venetian Lane Fayetteville, AR 72703.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are

provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer

reports.  15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to

follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant were reporting criminal records that belong to an unrelated consumer who has a different name and Social Security Number than Plaintiff.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening

Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff's Job with Imperial Co

40. Plaintiff has been working with Imperial Co for some time.

41. On October 1, 2025, Plaintiff came to work and was immediately asked by his supervisor to follow him to the office.

42. Imperial Co contracted with Defendant to conduct background checks, including criminal background checks, on its employees.

43. On or about September 30, 2025, Imperial Co ordered a criminal background check on Plaintiff from Defendant.

44. On or about September 30, 2025, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Imperial Co.

45. Within that consumer report, Defendant published inaccurate information about Plaintiff.

46. Specifically, Defendant's consumer report about Plaintiff included five grossly inaccurate and stigmatizing convictions from Kern County, California, which appeared in the consumer report as follows:

```
KERN, CA
--------
Search Type:       Felony and Misdemeanor, 7 Years

COURT:             Kern County
CASE NUMBER:       BM666098A           SEE CHARGE CLASSIFICATION BELOW
FILING DATE:       11/30/04
CHARGE(S):         CT 1: VC23152(A) - ***USE VC 23152(A)>2014*** - M
                   CT 2: VC23152(B) - DUI ALCOHOL/0.08 PERCENT - M

DISPOSITION DATE: 12/15/04
DISPOSITION:       CT 1: PLED NOLO CONTENDERE
                   CT 2: DISM - FURTH. OF JUSTICE
SENTENCE:          JAIL/PRISON 2 DAYS;TOTAL CREDIT 0002 TIME SERVED 2
                   DAYS;CONFINEMENT LOCATION JAIL;SUMMARY PROBATION GRANTED
                   FOR 3 YRS;FINE TOTALS: 1690.00

IDENTIFIERS ON
   RECORD FILE:    NAME ON RECORD: KHIN, JONATHAN DAVID
                   DOB ON RECORD: 1985

COURT:             Kern County
CASE NUMBER:       BM733017A           M
FILING DATE:       06/20/08
CHARGE(S):         PC647(F) - DISORDERLY CONDUCT:DRUNK
DISPOSITION DATE: 07/07/08
DISPOSITION:       PLED NOLO CONTENDERE
SENTENCE:          FINE TOTALS: 400.00
IDENTIFIERS ON
   RECORD FILE:    NAME ON RECORD: KHIN, JONATHAN DAVID
                   DOB ON RECORD: 1985
```

Subject: CANO, JUAN MANUEL                                    CourtHouse Concepts, In
Client:  IMPERIAL LLC                                                           Page

```
CASE NUMBER:       BM799552A            M
FILING DATE:       02/07/12
CHARGE(S):         PC647(F) - DISORDERLY CONDUCT:DRUNK
DISPOSITION DATE:  02/23/12
DISPOSITION:       PLED NOLO CONTENDERE
SENTENCE:          FINE TOTALS: 435.00
IDENTIFIERS ON
  RECORD FILE:     NAME ON RECORD: KHIN, JONATHAN DAVID
                   DOB ON RECORD: 1985

COURT:             Kern County
CASE NUMBER:       BM819796A            M
FILING DATE:       03/26/13
CHARGE(S):         PC647(F) - DISORDERLY CONDUCT:DRUNK
DISPOSITION DATE:  04/12/13
DISPOSITION:       PLED NOLO CONTENDERE
SENTENCE:          FINE TOTALS: 460.00
IDENTIFIERS ON
  RECORD FILE:     NAME ON RECORD: KHIN, JONATHON DAVID
                   DOB ON RECORD: 1985

COURT:             Kern County
CASE NUMBER:       BM948239A            SEE CHARGE CLASSIFICATION BELOW
FILING DATE:       04/07/20
CHARGE(S):         CT 1: VC23152(A)>2014 - DRIVE UNDER THE INFLUENCE OF
                   ALCOHOL - M
                   CT 2: VC23152(B) - DUI ALCOHOL/0.08 PERCENT - M
                   CT 3: VC21650 - RIGHT HALF OF ROADWAY, FAILURE TO DRIVE ON
                   - I

DISPOSITION DATE:  05/27/20
DISPOSITION:       CT 1: PLED NOLO CONTENDERE
                   CT 2: DISM - FURTH. OF JUSTICE
                   CT 3: DISM - FURTH. OF JUSTICE
SENTENCE:          JAIL/PRISON 10 DAYS;TOTAL CREDIT 0001 TIME SERVED
                   1 DAYS;CONFINEMENT LOCATION JAIL;SUMMARY PROBATION GRANTED
                   FOR 3 YRS;FINE TOTALS: 2018.00
IDENTIFIERS ON
  RECORD FILE:     NAME ON RECORD: KHIN, JONATHAN DAVID
                   DOB ON RECORD: 1985


STATEWIDE, OK
--------------
Search Type:     Felony and Misdemeanor, 7 Years
Court Searched:  COUNTY SEAT
No Court Records found in the jurisdictions searched for JUAN MANUEL CANO.


TULSA, OK
---------
Search Type:     Felony and Misdemeanor, 7 Years
Court Searched:  COUNTY SEAT
No Court Records found in the jurisdictions searched for JUAN MANUEL CANO.
```

47. The criminal convictions reported by Defendant about Plaintiff to Imperial Co. *do not* belong to Plaintiff.

48. Plaintiff has never been charged with or convicted of a crime in his life.

49. A cursory review of the widely available public court records confirms that the records belong to an unrelated male, Jonathan David Khin ("Convicted Felon Khin").

50. Had Defendant actually consulted or obtained the widely available public court records regarding the five convictions, it would have seen obvious discrepancies between Convicted Felon Khin and Plaintiff.

51. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Khin include the following:

    (a) Plaintiff's legal name is "Juan Manuel Cano Cano" and the criminal records belong to a "Jonathan David Khin," which is both clearly indicated on the face of the consumer report and in the widely available public records from Kern County, California;

    (b) Plaintiff has only ever resided in Oklahoma, which is confirmed and clearly indicated on the face of the subject consumer report, yet the public court records regarding the criminal convictions indicate that Convicted Felon Khin resided in Kern, California at the time he committed the offenses; and,

    (c) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Convicted Felon Khin.

52. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's employer.

53. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different name than Plaintiff, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

54. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Imperial Co. Suspended Plaintiff's Job**

55. On October 1, 2025, Plaintiff's employer sent him home and informed him of the termination of his employment after receiving an employment background check report from the Defendant.

56. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Jonathan David Khin, were published in the consumer report Defendant sold about Plaintiff to Imperial Co.

57. Plaintiff contacted Imperial Co and informed them that he has never lived in California, that he is not Convicted Felon Khin, that he does not have a name Jonathan

David Khin, that he has a different social security number from that of Convicted Felon Khin. Plaintiff explained that the serious criminal convictions of Convicted Felon Khin do not belong to him.

58. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Khin's serious criminal convictions reported on the subject consumer report – specifically, the impact of the same on his future.

59. Specifically, Defendant matched Plaintiff and Convicted Felon Khin and published the criminal records of Convicted Felon Khin onto the consumer report about Plaintiff and sold that report to Plaintiff's employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Imperial Co., but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

60. On October 1, 2025, desperate to recover his job with Imperial Co. and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via email with Defendant.

61. Plaintiff identified himself and provided information to Defendant to support his dispute.

62. Plaintiff specifically disputed the criminal records of Convicted Felon Khin.

63. Plaintiff specifically stated that the criminal records of Convicted Felon Khin do not belong to Plaintiff.

64. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Khin's criminal records from any consumer report about Plaintiff.

65. On October 1, 2025, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed the criminal records from the subject consumer report.

66. Defendant also communicated to Plaintiff that it had issued a corrected consumer report to Imperial Co.

67. Plaintiff's manager indicated that Plaintiff could return to work the next day.

68. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

69. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

70. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

71. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

72. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

73. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

74. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

75. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and

embarrassment.

76. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

77. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

|  |  |
|---|---|
| Date: October 22, 2025 | */s/ Haley L. Simmoneau*<br>Haley L. Simmoneau, OBA No. 30253<br>**Athena Legal Group PLLC**<br>PO Box 1364<br>Mustang, OK 73064<br>T: 405-212-3945<br>F: 888-805-3545<br>Email: Haley@athenalegalteam.com<br><br>*Attorneys for Plaintiff*<br>*Juan Manuel Cano Cano* |

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

CourtHouse Concepts, Inc.
4250 N Venetian Lane
Fayetteville, AR 72703

*/s/ Ann Stevenson*